J-S35044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE ADOPTION OF: A.C., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.C., BIOLOGICAL MOTHER | : : : : : : | |
| | : | No. 236 MDA 2018 |

Appeal from the Decree January 5, 2018
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 048-Adopt-2017

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                      **FILED JUNE 26, 2018**

J.C. (Mother) appeals from the decree that involuntarily terminated her parental rights to her daughter, A.C. (Child), born in March 2013.[1] Additionally, Mother's counsel filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we deny counsel's petition to withdraw, vacate the order, and remand for further proceedings consistent with this memorandum.

---

[1] The trial court entered separate decrees that same day, terminating involuntarily the parental rights of Child's unknown father and confirming the consent to adoption by Child's presumptive father, D.G. Presumptive Father and Unknown Father did not appeal the termination of their parental rights, nor did they file a brief in connection with this appeal.

The trial court summarized the factual and procedural history of this case as follows:

> [Mother] is the biological mother of [Child], born in 2013. Following a suicide attempt by [Child's] minor sister on June 10, 2016, a shelter care hearing was scheduled for June 16, 2016 for both children; however, [Mother] vanished with [Child] and neither [Mother] nor [Child] could be located for the hearing.[FN]9 The [Cumberland County Children and Youth Services (CCCYS)] requested and received a pick-up order for [Child], which was signed by the Hon. Albert Masland on June 17, 2016. [Child] was adjudicated dependent on June 27, 2016 due to concerns with [Mother's] long-standing mental health issues, transiency, and inability to properly care for her children.[FN]12 [Child's] whereabouts were unknown at the time of adjudication. On July 18, 2016, [Child] was located in Colorado, where [Mother] had been arrested by federal authorities in relation to a bomb threat. After briefly being placed into foster care in Colorado, the pick-up order for [Child] was executed and the child was transported back to Pennsylvania and placed into foster care in this Commonwealth on July 20, 2016. [Mother's] biological family did not present as resources for her.[FN]16 In March 2017, [Child] was moved to a second pre-adoptive foster home, where she remains.

[FN] 9 The shelter care hearing was postponed with regard to [Child] until [Child] could be located; [Child's] sister, D.C., was placed into the care and custody of the Agency following the hearing on June 16, 2016.

[FN] 12 [Child] has three older biological siblings, all of whom were removed from [Mother's] care at various times since [CCCYS] initially became involved with the family in 2005; one is deceased, one was adopted after [Mother's] rights were involuntarily terminated, and one remains in care. The initial reasons for CCCYS involvement in this instance was because of allegations of transiency and medical and educational neglect of [Child] and D.C., her sister.

[FN] 16 Maternal aunt initially presented as a temporary resource for [Child]; however, she later rescinded that decision. Maternal grandmother expressed from the beginning of [CCCYS's] involvement that she would not be a permanency resource for the child.

Trial Court Opinion, 3/7/18, at 2-3 (some footnotes and citations omitted).

On June 21, 2017, CCCYS filed a petition to change Child's permanency goal from reunification to adoption and to involuntarily terminate Mother's parental rights to Child. The trial court conducted a combined termination and goal change hearing on January 5, 2018. At the conclusion of the hearing, the trial court orally delivered its order terminating Mother's parental rights to Child and changing Child's permanency goal to adoption. The trial court entered its decree that same day. Mother timely filed a notice of appeal on February 5, 2018,[2] along with a concise statement of errors complained of on appeal. Mother's counsel filed a petition to withdraw and **Anders** brief on April 11, 2018.

We begin by addressing counsel's petition to withdraw and **Anders** brief. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). This Court extended the **Anders** procedure to appeals from

---

[2] Generally, a party must file his or her notice of appeal within thirty days after the entry of the order being appealed. Pa.R.A.P. 903(a). Here, thirty days after January 5, 2018, was February 4, 2018. Because February 4, 2018, was a Sunday, Mother timely filed her notice of appeal on Monday, February 5, 2018. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

decrees involuntarily terminating parental rights in **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has held that an **Anders** brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, Mother's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. Counsel provided Mother with a copy of the brief and a letter advising her that she may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of ***Anders*** and ***Santiago***. Therefore, we may proceed to review the issues outlined in the ***Anders*** brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

After careful examination of the certified record, we have identified an issue relating to the Child's statutory right to counsel. The Adoption Act provides that children have the right to representation by counsel in all contested termination proceedings. Section 2313(a) of the Act provides as follows:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of

the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

The term "counsel" in Section 2313(a) refers to an attorney representing the child's legal interests. ***In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017). As our Supreme Court has emphasized, a child's legal interests are distinct from his or her best interests. ***Id.*** at 174. A child's legal interests are synonymous with his or her preferred outcome, while a child's best interests must be determined by the trial court. ***Id.***

This Court clarified the requirements that counsel must meet in order to provide adequate representation of a child's legal interests in ***In re Adoption of T.M.L.M.***, __ A.3d __, 2018 WL 1771194 (Pa. Super. April 13, 2018). In that case, the child was just shy of six years old at the time of the hearing to terminate his mother's parental rights. ***Id.*** at *4. However, the attorney appointed to represent the child did not attempt to interview the child, and did not state the child's preferred outcome on the record. ***Id.*** at *3-4. The child's attorney did not advocate for the child's legal interests during the hearing, and instead focused solely on his best interests. ***Id.*** Moreover, the attorney did not file a brief in this Court, nor did she join a brief filed by another party. ***Id.*** at *4.

This Court concluded that the child had been deprived of his statutory right to counsel. We reasoned as follows:

At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, **effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position.** It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, . . . **it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.**

*Id.* at *4 (citations omitted) (emphasis added).

Similarly, our review of the record in this matter reveals that Child was denied her statutory right to counsel. Child's attorney, Damian J. Stefano, Esquire (Counsel), did not attempt to interview Child or determine her preference. ***See*** Authority to Pay Court Appointed Counsel, 5/17/18 (invoice #2174); Authority to Pay Court Appointed Counsel, 4/23/18 (invoice #2033); Authority to Pay Court Appointed Counsel, 2/26/18 (invoice #1927); Authority to Pay Court Appointed Counsel, 12/14/17 (invoice #1756); Authority to Pay Court Appointed Counsel, 11/13/17 (invoice #1712); Authority to Pay Court Appointed Counsel, 10/9/17 (invoice #1589); Authority to Pay Court Appointed Counsel, 8/14/17 (invoice #1462); Authority to Pay Court Appointed Counsel, 7/17/17 (invoice #1372); and Authority to Pay Court

Appointed Counsel, 6/14/17 (invoice #1277). Most egregiously, Counsel failed to appear at the termination hearing. Indeed, counsel did little, if anything, to advocate for Child. As noted above, Counsel did not file a brief in this Court, nor did he join the brief filed by any other party. *See T.M.L.M.*, 2018 WL 1771194, at *4. ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing.").

In short, Counsel failed to advocate for Child's legal interest during the termination hearing and on appeal.[3] Depriving Child of her right to counsel is a structural error that can never be harmless, and we must not speculate as to the effect of counsel's deficient performance. *L.B.M.*, 161 A.3d at 183 ("[H]armless error analysis would require speculation after the fact to evaluate the effect of the lack of appointed counsel, effectively requiring proof of a negative."). Absent some indication that Counsel interviewed Child, followed by Counsel's statement of Child's preferred outcome on the record, we cannot find adequate representation in this case.

Therefore, we deny the petition to withdraw filed by Mother's counsel and vacate the order terminating Mother's parental rights. On remand, Child's counsel must interview Child and attempt to discern her preferred outcome.

---

[3] Although Child had the benefit of a guardian *ad litem* (GAL) during the hearing, the GAL did not rectify the deficient performance by Counsel. *L.B.M.*, 161 A.3d at 174.

In the event Counsel no longer represents Child, the trial court shall appoint new counsel.

Once Child has counsel, and counsel ascertains Child's preference, counsel shall notify the trial court. If Child's preferred outcome is consistent with the result of the prior proceedings, the court may supplement the record with a statement of Child's legal interests and re-enter its termination order. Alternatively, if Child's preferred outcome is inconsistent with the result of the prior proceedings, the court shall conduct a new hearing. *See T.M.L.M.*, 2018 WL 1771194, at *4 (concluding that the trial court "shall conduct a new hearing only if it serves the 'substantive purpose' of providing [the child] with an opportunity to advance his [or her] legal interests through his [or her] new counsel") (footnote omitted).

Petition to withdraw denied. Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2018